## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS WHITE, ET AL., | : | CIVIL ACTION NO. |
| *PLAINTIFFS* | | 3:02CV1589(WWE) |
| | : | |
| v. | : | |
| | : | |
| NORMAN NAULT, ET AL. | | |
| *DEFENDANTS* | : | July 29, 2004 |

### DEFENDANTS' LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Rule 56 of the Federal and Local Rules of Civil Procedure, defendants submit this statement in opposition to Plaintiffs' cross-motion for summary judgment. Unless specifically noted, the evidence cited in support of denials is attached to defendants' Statement of Material Fact Not In Dispute dated May 27, 2004.

Defendants note as a general matter that plaintiffs Local Rule 56(a)(1) statement fails to comply with the format required under the local rules as it does not include discrete factual assertions in each paragraph, supported by a specific citation to the record.  Rather, each of plaintiffs' paragraphs contains multiple factual assertions, at the end of which are one or more citations, which are not identified as supporting any particular assertion.  In many instances, therefore, it is difficult to simply admit or deny each paragraph as required by Local Rule 56(a)(2).   Moreover, in many instances, the evidence cited in support of a factual assertion does not in fact support the assertion.

While defendants' deny or admit with qualification or explanation some of the plaintiffs' factual assertions, it is defendants' emphatic position that there are *no* genuine issues of material

fact that require a trial.  To the contrary, defendants are entitled to summary judgment on all counts for the reasons set forth in their Motion For Summary Judgment dated May 27, 2004.

1.      Admitted for purposes of this motion.

2.      Admitted for purposes of this motion.

3.      Admitted for purposes of this motion.

4.      Admitted for purposes of this motion.

5.      Admitted for purposes of this motion.

6.      Admitted for purposes of this motion.

7.      Admitted for purposes of this motion.

8.      Admitted for purposes of this motion.

9.      Admitted for purposes of this motion.

10.      Admitted for purposes of this motion, but it is denied that any criminal conduct occurred in the closing of the Kenney administration.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

11.      Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

12.      Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

13.      Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

14.    Everything is admitted except the last sentence ("This description…"), which is neither admitted nor denied because no evidentiary support is cited.

15.    Admitted for purposes of this motion, but it is denied that any defendant or any other State Police Officer had any friendship with Debra Collins or entered into any unlawful conspiracies for her benefit.  See Nault Aff. at ¶ 11-13; Szamocki Aff. at ¶ 11-12; Gibeault Aff. at ¶ 9-10; O'Connor Aff. at ¶ 12; Turner Aff. at  ¶ 11-12; Collins Depot at 37-41, 88-92, 117-119, 124.  Defendants also deny that Ms. Collins had any role in the investigation of the charges at issue in this case, as opposed to the larceny charges against plaintiff White, which are not at issue in this case.  See Collins Depo. at 116-117; Nault Aff. at ¶ 13.

16.    Admitted for purposes of this motion, but the suggestion that defendant Szamocki's initial impressions of the purpose of Attorney Meisler's letter precluded a thorough investigation of its allegations is denied.  See Nault Aff. at 10-14; Szamocki Aff. at ¶ 10.

17.    Admitted for purposes of this motion, but the suggestion that defendant Szamocki's initial impressions of the purpose of Attorney Meisler's letter precluded a thorough investigation of its allegations is denied.  See Nault Aff. at 10-14; Szamocki Aff. at ¶ 10.

18.    With the exception of the last sentence, this paragraph is admitted for purposes of this motion.  The last sentence is denied.  See Nault Aff. at 30; Bourgeois Depo. at 64-68.  It is also denied that defendant Szamocki's initial impressions of the allegations concerning shredding and other alleged misconduct at the end of the Kenney Administration precluded a thorough investigation of those charges.  See Nault Aff. at 10-14; Szamocki Aff. at ¶ 10.

19.    Admitted for purposes of this motion.  It is denied, however, that Sergeant Szamocki's personal feelings concerning the existence of probable cause are relevant, as he was

not supervising the investigation at the time the formal probable cause determination was made. <u>See</u> Szamocki Aff. at ¶ 17.

20.    The contents of the Gibeault memo are admitted, but it is noted that plaintiffs' opinion of the falsity of a part of that memo is not supported by an evidentiary citation.

21.    Denied.  <u>See</u> Gibeault Memo (ex. 19 to plaintiff's memo).  Plaintiffs misrepresent the memorandum.  The memo does not state that the shredding accusations were unfounded, but rather that accusations regarding Attorney Solak's wife and about destruction of phone logs were unfounded.  <u>Id</u>.  At least as to the phone logs – which weren't destroyed by were seized by police as evidence (<u>see</u> Nault Aff. at 86) – Gibeault's memo was accurate.  In addition, the memo states that Meisler's allegations created the perception of a conflict of interest, not that this perception was Meisler's intent.  <u>See</u> Gibeault Memo.

22.    Admitted for purposes of this motion.

23.    Admitted for purposes of this motion.

24.    Admitted for purposes of this motion.

25.    Admitted for purposes of this motion.

26.    Admitted for purposes of this motion.

27.    Admitted for purposes of this motion.

28.    Admitted in part for purposes of this motion, denied in part.  However, Sergeant Szamocki's supervision of investigation was limited to three days.  <u>See</u> Szamocki Aff. at ¶ 15. Sergeant Turner's supervision was extremely limited.  <u>See</u> Turner Aff. at ¶ 7.  As Detective Nault testified, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will

4

oversee it, but you'll make the decisions where you're going to go."  Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

29.    Denied.  Attorney Solak requested two related, but separate investigations and two related, but separate, investigations were conducted.  <u>See</u> Nault Aff. at 17-18; Szamocki Aff. at ¶ 13-14.

30.    Denied.  Attorney Solak requested two related, but separate investigations and two related, but separate, investigations were conducted.  <u>See</u> Nault Aff. at 17-18; Szamocki Aff. at ¶ 13-14.

31.    Admitted for purposes of this motion.  The suggestion that Sergeant Szamocki supervised the investigations after the initial three days, or that reviewing reports amounts to supervision or direction of an investigation, is denied.  <u>See</u> Szamocki Aff. at ¶¶ 15-17.  As Detective Nault testified, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

32.    Admitted for purposes of this motion.

33.    Admitted for purposes of this motion.

34.    Admitted for purposes of this motion.

35.    Admitted for purposes of this motion.  However, Sergeant Szamocki's supervision of the investigation at issue in this case was limited to three days and did not include drafting or approving the affidavits at issue or making probable cause determinations.  Szamocki's Aff. at ¶¶ 15-17.

36. Admitted for purposes of this motion. However, Sergeant Szamocki's supervision of investigation was limited to three days was limited to three days and did not include drafting or approving the affidavits at issue or making probable cause determinations. Szamocki's Aff. at ¶¶ 15-17. See Szamocki Aff. at ¶ 15. Sergeant Turner's supervision was extremely limited and similarly did not include formally reviewing or approving the affidavits. See Turner Aff. at ¶ 7. As Detective Nault testified, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go." See Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

37. Admitted for purposes of this motion.

38. Admitted for purposes of this motion, but it should be noted that Aaron Auclair was privy to complaints against plaintiff White for mishandling judgment executions or wage garnishments. See Aaron Auclair Statement, Exhibit V to defendants' memorandum.

39. Denied. Aaron Auclair worked in the sheriff's office, as plaintiff White knew, and was privy to complaints against White. See Aaron Auclair Statement, Exhibit V to defendants' memorandum.

40. Admitted in part denied in part. Thomas White directed the investigation by, for example, instructing Gloria Marion and Henry Bourgeois that "[o]ne of you are probably going to have to have to talk to the Auclair boys." Bourgeois Depo. at 45 (copy of this page attached hereto as Exhibit A.)

41. Admitted for purposes of this motion, but this manual would not trump the criminal proscriptions against tampering with witnesses or obstructing justice.

42.     Admitted for purposes of this motion, but this manual would not trump the criminal proscriptions against tampering with witnesses or obstructing justice.

43.     Admitted for purposes of this motion.

44.     Admitted that Marion testified to this at her deposition.

45.     The first two sentences of this investigation are admitted for purposes of this motion.  The last sentence is denied as plaintiff White dispatched Marion to talk to the Auclairs.  Bourgeois Depo. at 45 (copy of this page attached hereto as Exhibit A.)

46.     Admitted for purposes of this motion that Bourgeois testified to this at his deposition.

47.     Admitted for purposes of this motion, but it is noted that the Auclairs could not have legally been disciplined for refusing to divulge information relating to an on-going criminal investigation.

48.     Admitted for purposes of this motion that there is some question about whether the Auclairs were locked in to the interview room, although whether they were or not remains far from clear to this day.  See Downer Depo at 55-56.   As noted in defendants' motion, the State Police Defendants did not misrepresent any facts concerning whether any doors were locked to the court in seeking warrants affidavits, but rather reported what the Auclairs had said on this subject.  See Nault Aff. at ¶¶ 34-35; Arrest Warrant Affidavits at ¶ 48.

49.     Admitted for purposes of this motion, but it is noted that sheriff's office policy obviously do not trump criminal laws concerning witness tampering and obstruction of justice; nor would sheriff's policies permit criminal conduct, such as obstruction of justice or witness tampering.  See Office of County Sheriffs Ethics Statement (Exhibit 22 to plaintiffs' motion).

50.     Denied.  See Nault Aff. at ¶¶ 124-130.

51.    Admitted for purposes of this motion.

52.    Admitted for purposes of this motion, but it is noted but it is noted that sheriff's office policy obviously do not trump criminal laws concerning witness tampering and obstruction of justice; nor would sheriff's policies permit criminal conduct, such as obstruction of justice or witness tampering.  See Office of County Sheriffs Ethics Statement (Exhibit 22 to plaintiffs' motion).

53.    Admitted for purposes of this motion, but it is noted that sheriff's office policy obviously do not trump criminal laws concerning witness tampering and obstruction of justice; nor would sheriff's policies permit criminal conduct, such as obstruction of justice or witness tampering.  See Office of County Sheriffs Ethics Statement (Exhibit 22 to plaintiffs' motion).

54.    Denied to the extent that the suggestion is that the sheriff's system has exclusive jurisdiction over law enforcement within the confines of a courthouse.   Moreover, the evidentiary citation offered in support of this assertion does not support it.

55.    Admitted for purposes of this motion.

56.    Admitted that Debra Collins drove Auclair to the police barracks, but note that the reference to "good relationship" in the deposition citation is clearly to a good working relationship, and not to a friendship.  Debra Collins and the defendants all agree that Ms. Collins was not friends with any of the defendants.   See Nault Aff. at ¶ 11-13; Szamocki Aff. at ¶ 11-12; Gibeault Aff. at ¶ 9-10; O'Connor Aff. at ¶ 12; Turner Aff. at ¶ 11-12; Collins Depot at 37-41, 88-92, 117-119, 124.

57.    Admitted for purposes of this motion.

58.    Admitted for purposes of this motion with the exception of the assertions that Aaron Auclair told Szamocki he was going to tape his encounter with White or that Szamocki

8

testified that he may have personally provided a tape to Auclair – the citations provided by plaintiffs do not support these assertions.

59.     Admitted for purposes of this motion.

60.     Admitted, but note that this shredding was not illegal.  <u>See</u> Nault Aff. at ¶ 14-15; Coe Report at ¶ 8; Coe report at 69.

61.     Admitted that this is part of what Aaron Auclair's statement includes.  The full statement is appended to defendants' motion as Exhibit V.

62.     As to the first four sentences of this paragraph, it is admitted for purposes of this motion that Adam Auclair may have testified to these assertions at the recusal hearing before Judge Kaplan, which occurred after the arrest of the plaintiffs.  However, it should be noted that Adam Auclair provided a statement to the State Police that suggested that Marion raised the topic about the schedule.   <u>See</u> Statement of Adam Auclair; Nault Aff. at ¶ 37; However, it must also be clearly noted that neither Auclair ever mentioned eating pizza to the State Police Defendants in their statements, and that the defendants did not know at the time of that the warrant affidavits were prepared or submitted to court that the Auclairs may have been eating pizza.  <u>See</u> Statements of Aaron and Adam Auclair; Nault Aff. at ¶ 37; O'Connor Aff. at ¶ 21; Szamocki Aff. at ¶ 19; Turner Aff. at ¶ 14; Gibeault Aff. at ¶ 12; Coe Aff. at ¶ 13; Nault testimony at 29.

63.     Admitted for purposes of this motion that this is how White characterized the tape during his deposition, but not that this is what the tape states, as the tape is not in evidence in this matter.

64.     Admitted for purposes of this motion.

65.     Admitted for purposes of this motion.

66.     Admitted for purposes of this motion, but note that this paragraph misidentifies Thomas White as Aaron White.

67.     Admitted.

68.     Denied that it is clear that the Auclairs were not locked in.  <u>See</u> Downer Depo at 55-56.  Note also that the warrant affidavits clearly informed the court as to the possibility of a second unlocked door.  <u>See</u> Warrant Affidavits at ¶ 48.

69.     Admitted for purposes of this motion, but it is denied that there is anything improper about choosing not to interview the plaintiffs.  <u>See</u> Nault Aff. at ¶ 55; Coe Aff. at ¶ 18.

70.     Admitted for purposes of this motion that Ruth Simmons recalled at her deposition preparing two transcripts of the tape.  It should be noted, however, that the State Police received only one transcript from Ms. Simmons, and that transcript was accurate in the opinion of Detective Nault, who listened to the tape, as well.  <u>See</u> Nault Aff. at ¶ 25; transcript (exhibit Q to defendants' motion).

71.     Admitted for purposes of this motion that this is how the transcript reads in part. It should be noted, however, that parts of the tape and transcript not mentioned by plaintiffs, but included in the warrant affidavits, are potentially incriminating against Marion.  See Nault Aff. at ¶ 26; Exhibit Q to defendants' motion.

72.     Admitted that this is what Adam Auclair testified to at the recusal hearing after the arrest of the plaintiffs.  The defendants' knowledge of what Adam Auclair may have known prior to the arrest of the plaintiffs is contained in Adam Auclair's state police statement.  <u>See</u> Exhibit W to defendants' motion.

73.     Admitted for purposes of this motion, but it should be noted that the conduct of an internal sheriff's investigation does not permit the commission of criminal acts, such as

obstruction of justice or witness tampering in a police investigation; nor would Sheriffs'

Department policies or protocols countenance such criminal acts.

74.    Denied.   There remains significant question about whether the Auclairs were

locked in to the interview room, although whether they were or not remains far from clear to this

day.   See Downer Depo at 55-56.   Moreover, as noted in defendants' motion, the State Police

Defendants did not misrepresent any facts concerning whether any doors were locked to the

court in seeking warrants affidavits, but rather reported what the Auclairs had said on this

subject.   See Nault Aff. at ¶¶ 34-35; Arrest Warrant Affidavits at ¶ 48.

75.    Admitted for purposes of this motion.  Note that the "investigation" that Turner

did not see problems with, was the criminal investigation of plaintiffs.  Note also that Detective

Turner did not testify that the plaintiffs' internal investigation of the Auclairs was "legitimate" as

this paragraph suggests.  See Turner Testimony (attached to plaintiffs' motion) at 8-9.

76.    Admitted for purposes of this motion.  The State's Attorneys Office clearly was

the complainant, as State's Attorney Solak requested the investigation at issue.  See Gibeault

Aff. at ¶ 5; Szamocki Aff. at ¶¶ 13-14.

77.    Admitted for purposes of this motion that Det. Nault may have been in the lock up

area on one or more occasions during his career prior to this investigation.  See Nault testimony

at 29.

78.    Admitted for purposes of this motion.  It should be noted, however, that there was

no need to conduct such interviews, as the State Police were informed by the central office of the

Sheriff's Department that no documents were improperly shredded.  See Nault Aff. at ¶ 14.

There was no evidence that any criminal conduct, including destruction of documents, occurred

in the closing of the Kenney administration.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

79.    Admitted in part, denied in part.  For the first three days of the investigation at issue in this case (witness tampering/obstruction of justice), Sergeant Szamocki supervised, but thereafter he had no further substantive responsibility for the investigation.  <u>See</u> Szamocki Aff. at ¶¶ 15-16.  Thereafter, Sergeant Turner assumed supervision, although by that time the direction of the investigation was defined and very little direct supervision was required.  <u>See</u> Turner Aff. at ¶ 5-9.  As Detective Nault testified, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

80.    Admitted for purposes of this motion.  There were sound law enforcement reasons for not taking the statements from the plaintiffs prior to their arrests. <u>See</u> Nault Aff. at ¶ 55; Coe Aff. at ¶ 18.

81.    Admitted for purposes of this motion.

82.     Admitted for purposes of this motion.  There were sound law enforcement reasons for not taking the statements from the plaintiffs prior to their arrests. <u>See</u> Nault Aff. at ¶ 55; Coe Aff. at ¶ 18.

83.    Admitted for purposes of this motion.  There were sound law enforcement reasons for not taking the statements from the plaintiffs prior to their arrests. <u>See</u> Nault Aff. at ¶ 55; Coe Aff. at ¶ 18.

84.    Admitted for purposes of this motion.

85.    Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

86.    Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

87.    Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

88.    Admitted for purposes of this motion that Kenney removed records, but the suggestion that this removal was unauthorized or that criminal conduct, including  occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.  The citation provided by plaintiffs for the assertion that this removal was unauthorized does not support that proposition.  <u>See</u> Nault testimony at 13.

89.    Admitted for purposes of this motion, but the suggestion that criminal conduct, including the improper removal of a computer, occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

90.    Admitted for purposes of this motion.

91.    Denied.  Sheriff Kenney did not retain the copies of documents he removed. Rather, as is clear from the very citation cited by plaintiffs, those documents were delivered to the central Sheriffs Office.  <u>See</u> Nault Testimony at 17. Moreover, the suggestion that this removal was unauthorized or that criminal conduct, including  occurred in the closing of the

Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

92.    Admitted that the portions of the affidavit concerning embezzlement, larceny and misuse of campaign funds was prepared under Sergeant Szamocki's supervision.  That aspect of the warrant is not challenged in this case.  The remaining parts of the warrant were prepared by Detective Nault without any involvement by defendant Szamocki.  <u>See</u> Szamocki Aff. at ¶ 17; Nault Aff. at ¶ 34-45.

93.    Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

94.    Admitted for purposes of this motion, but the suggestion that criminal conduct occurred in the closing of the Kenney administration is denied.  <u>See</u> Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

95.    Admitted for purposes of this motion that there is some question about whether the Auclairs were locked in to the interview room, although whether they were or not remains far from clear to this day.  <u>See</u> Downer Depo at 55-56.   As noted in defendants' motion, the State Police Defendants did not misrepresent any facts concerning whether any doors were locked to the court in seeking warrants affidavits, but rather reported what the Auclairs had said on this subject.  <u>See</u> Nault Aff. at ¶¶ 34-35; Arrest Warrant Affidavits at ¶ 48.

96.    Admitted for purposes of this motion that there is some question about whether the Auclairs were locked in to the interview room, although whether they were or not remains far from clear to this day.  <u>See</u> Downer Depo at 55-56.   As noted in defendants' motion, the State Police Defendants did not misrepresent any facts concerning whether any doors were locked to

the court in seeking warrants affidavits, but rather reported what the Auclairs had said on this subject. <u>See</u> Nault Aff. at ¶¶ 34-35; Arrest Warrant Affidavits at ¶ 48.

97.    The first sentence is admitted for purposes of this motion. The second sentence is admitted in part, denied in part. Sergeant Turner did not have any formal or substantive role in drafting or approving the warrant affidavit at issue in this case. <u>See</u> Turner Aff. at ¶¶ 8-9. The primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak. <u>See</u> Nault Aff. at ¶ 41-43. Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice. <u>Id</u>.

98.    Admitted that the defendants at all relevant times possessed a good faith, reasonable belief that probable cause existed to arrest the plaintiffs on charges relating to witness tampering and obstruction of justice. The primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak. <u>See</u> Nault Aff. at ¶ 41-43. Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice. <u>Id</u>.

99.    Admitted for purposes of this motion. It should be noted, however, that defendant Gibeault had no formal or substantive role in preparing the affidavits or approving the warrants at issue in this case. <u>See</u> Gibeault Aff. at ¶ 6. The primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak. <u>See</u> Nault Aff. at ¶ 41-43. Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice. <u>Id</u>.

15

100.    Admitted in part, denied in part.  The primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.

101.    Admitted in part, denied in part.  Admitted that Sergeant Turner, based in part on the statements of the Auclairs, possessed a good faith belief that Marion was guilty of the charged offenses.  Plaintiffs' misrepresent the testimony of Sergeant Turner, who actually testified that if the doors were definitely unlocked it "might" alter his thinking on probable cause.  See Turner testimony at 33.  There remains significant question about whether the Auclairs were locked in to the interview room, although whether they were or not remains far from clear to this day.  See Downer Depo at 55-56.  Moreover, as noted in defendants' motion, the State Police Defendants did not misrepresent any facts concerning whether any doors were locked to the court in seeking warrants affidavits, but rather reported what the Auclairs had said on this subject.  See Nault Aff. at ¶¶ 34-35; Arrest Warrant Affidavits at ¶ 48.

102.    Admitted for purposes of this motion.  However, the primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.

103.    Denied.  The primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that

probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.  Lieutenant Gibeault's cited testimony referred not to his direct knowledge, but his understanding of general procedure.  See Gibeault Testimony at 68.  Lt. Gibeault actually testified that "the decision to proceed with the prosecution or the decision to forward that application or warrant onto a judge" is made by "the State's Attorney."  Id.

104.    Denied.  Sergeant Turner actually testified that "bluffing the people and getting them to think that you know more than you actually do in an effort to get them to tell you the whole story" is common.  See Turner Testimony at 34.  Sergeant Turner did not testify that threatening was "common" but rather that he was aware of instances of it.  Id. at 34-35.  Nor did he testify that any such techniques were used in this case.  It is also denied that such techniques are not unlawful.

105.    Admitted.

106.    Admitted.

107.    Admitted.

108.    Admitted.

109.    Admitted.

110.    Admitted.

111.    Defendants neither admit nor deny this legal conclusion.

112.    Defendants neither admit nor deny this legal conclusion.

113.    Admitted for purposes of this motion.

114.    Admitted for purposes of this motion.

115.    Admitted for purposes of this motion.

116.    Admitted for purposes of this motion.

117.    Admitted for purposes of this motion.

118.    Admitted for purposes of this motion.

119.    Admitted for purposes of this motion.

120.    Admitted for purposes of this motion.  However, the primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.  The court is respectfully referred to Detective Nault's affidavit for a description of the process by which Attorney Solak reviewed and approved the warrant.

121.    Admitted for purposes of this motion.   However, the primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.  The court is respectfully referred to Detective Nault's affidavit for a description of the process by which Attorney Solak reviewed and approved the warrant.

122.    Admitted for purposes of this motion.

123.    Admitted for purposes of this motion.

124.    Admitted in part denied in part.  Attorney Solak requested two related, but separate investigations and two related, but separate, investigations were conducted.  See Nault Aff. at 17-18; Szamocki Aff. at ¶ 13-14.

125.    Admitted for purposes of this motion, but the suggestions that criminal conduct occurred in the closing of the Kenney administration or that the possibility of such criminal conduct was not adequately investigated is denied.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

126.    Admitted in part, denied in part.  Detective Nault led the investigation.   For the first three days of the investigation at issue in this case (witness tampering/obstruction of justice), Sergeant Szamocki supervised, but thereafter he had no further substantive responsibility for the investigation.  See Szamocki Aff. at ¶¶ 15-16.  As Detective Nault testified, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

127.    Admitted in part, denied in part.  In fact, Detective Nault actually testified that, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.  Moreover, the primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.  The court is respectfully referred to Detective Nault's affidavit for a description of the process by which Attorney Solak reviewed and approved the warrant.

128.    Admitted in part, denied in part.  Defendants admit that a detective generally does not have a say in who is assigned to a case.  In fact, Detective Nault actually testified that, "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what, and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  See Nault testimony (exhibit 35 to plaintiffs' motion) at 141-42.

129.    Admit for purposes of this motion that this is a correct recitation of Nault's testimony.  Deny the suggestion that reading reports amounts to substantive supervision of an investigation.  Moreover, the primary and final supervision and decision making authority over the content of the warrant and the identity of the charges was exercised by State's Attorney Solak.  See Nault Aff. at ¶ 41-43.  Attorney Solak advised the State Police defendants that probable cause existed to seek the arrest of the plaintiffs on charges relating to witness tampering and obstruction of justice.  Id.  The court is respectfully referred to Detective Nault's affidavit for a description of the process by which Attorney Solak reviewed and approved the warrant.

130.    This assertion is nonsensical and incomprehensible, so no response is possible.

131.    Admitted for purposes of this investigation that defendants Nault and Turner, after a thorough investigation, were of the correct personal opinion that no criminal activity occurred in connection with the shredding.  This conclusion was correct and later affirmed by Special State's Attorney Coe.  See Nault Aff. at 10-15; Szamokci Aff. at 10; Coe Aff. at 8; Coe Report at 67, 69.

132.    Admitted for purposes of this motion.

133.    Admitted for purposes of this motion that this was one of the subjects discussed with Aaron Auclair on July 19, 1999.

DEFENDANTS, NORMAN NAULT, ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
PERRY ZINN ROWTHORN
Assistant Attorney General
Federal Bar No. ct 19749
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Perry.Zinn-Rowthorn@po.state.ct.us

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 29th day of July, 2004 to:

Jon Schoenhorn, Esq.
97 Oak St.
Hartford, CT 06106

_____
Perry Zinn Rowthorn
Assistant Attorney General