attorney speak for you."

· Marion closed the meeting by telling Adam he could not talk to Debra or Charles Collins and that their conversation was part of an internal investigation and must remain internal.

See Nault Aff. at 27; Adam Auclair Statement (Defendants' Exhibit W).

DENY. See paragraph 33 of Affidavits in support of arrest warrants for Plaintiff's marked as Exhibits 1, 2, and 3; attached to Plaintiffs' Statement of Facts Not In Dispute; and Statement of Adam Auclair attached as Exhibit W to Defendants' Statement of Material Facts Not In Dispute.

### H.    Other Evidence of Witness Tampering and Obstruction of Justice

131.    In addition to the evidence provided to the Auclairs, Detective Nault included other evidence in the affidavits relevant to witness tampering and obstruction of justice.   See Nault Aff. at 28.

DENY. See arrest warrant affidavits for Plaintiffs attached to Plaintiff's Statement of Material Facts Not In Dispute marked as Exhibits 1, 2 and 3.

132.    Detective Nault included in the affidavits information about an incident in March or April of 1999, in which Henry Bourgeois approached Sergeant Szamocki at Troop D barracks and asked him questions about the investigation into Tom White.  See Nault Aff. at 29.

ADMIT

133.    At that time, Sergeant Szamocki was supervising Trooper O'Connor's on-going investigation of Tom White for embezzlement.  See Nault Aff. at 29.

ADMIT

134.    Bourgeois asked Szamocki generally about the investigation of Tom White,

41

whether White was going to be arrested, and, if so, whether he could remain a sheriff. See Nault Aff. at 29.

### DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

135.    According to Detective Nault, it was inappropriate for plaintiff Bourgeois ask these sorts of questions about an on-going investigation, particularly considering that Bourgeois is a retired state police official and should know better. See Nault Aff. at 29.

### DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

136.    Bourgeois admitted at his Deposition to asking these questions. See Bourgeois Depo. at 59-62.

### ADMIT

137.    He also testified that it would be inappropriate for Sergeant Szamocki to provide information about an on-going investigation. See Bourgeois Depo at 61.

### ADMIT

138.    The affidavits also related a second attempt by Henry Bourgeois to discuss the on-going investigation of Thomas White with a state police official. See Nault Aff. at ¶ 30.

### ADMIT

139.    On June 30, 1999, Bourgeois approached Lt. Thomas Davoren, the commanding officer of Troop D. See Nault Aff. at ¶ 30.

### DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

140.    According to Davoren, Bourgeois commented that the White investigation "was about to get messy" and that he (Bourgeois) had counseled White "to take the offensive" in the investigation because "they are coming after him." See Nault Aff. at ¶ 30.

42

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

141.    According to Davoren, Bourgeois then remarked that Assistant State's Attorney Debra Collins and her husband had inappropriately shredded phone documents favorable to White.   See Nault Aff. at ¶ 30.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

142.    Lieutenant Davoren understood this remark to be a threat of unfavorable publicity concerning the State's Attorney's Office relating to the White investigation.   See Nault Aff. at ¶ 30.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

143.    Bourgeois admits that this conversation with Lt. Davoren.   See SMFNID at ¶   . Indeed, Bourgeois admits saying that the White investigation was about to "get messy" or words to that effect and to counseling White to take action.   See Bourgeois Depo. at 64-68.

DENY.  See Bourgeois Depo p 64 line 11.

144.    While Bourgeois disputes Davoren's understanding of the implication of these remarks, he does not point to any reason why the state police should have mistrusted Lt. Davoren's report.   See Bourgeois Depo. at 64-68.

DENY.  See Bourgeois Depo. at 64-68.

145.    The warrant affidavits include a reference to a conversation between Mr. Bourgeois and John Wisnieski, a janitor who witnessed some shredding in Sheriff Kenney's office on May 28, 1999.  See Nault Aff. at ¶ 31.

ADMIT

146.    State Police interviewed Wisnieski, who reported that he first told Sheriff White

43

about shredding.  See Nault Aff. at ¶ 31.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY.

147.    A week later, according to Wisnieski, Henry Bourgeois approached him and asked

if he knew anymore about the shredding incident.  See Nault Aff. at ¶ 31.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

148.    Bourgeois then asked Wisnieski to "keep it [his information] under his hat and not

tell anyone else what he knew."  See Nault Aff. at ¶ 31.

DENY.  Bourgeois Dep. at 41-42; attached as Exhibit A3 hereto.

**I.    The Alleged Constitutional Defects In The Warrant Affidavits**

149.    Detective Nault believed – and he was so advised by State's Attorney Mark Solak

– that the foregoing evidence provided probable cause to believe that the plaintiffs committed the

offenses relating to obstruction of justice and witness tampering with which they were charged.

See Nault Aff. at ¶ 32, 41-43.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

150.    At the time that the affidavits were prepared and submitted to the court, none of

the defendants knew or suspected that any of the information contained therein was false.  See

Nault Aff at ¶ 32-33; O'Connor Aff. at ¶ 17-18; Szamocki Aff. at ¶ 17; Turner Aff. at ¶ 10;

Gibeault Aff. at ¶ 8.

DENY.  See Testimony of Adam Auclair p 40; Testimony of Sgt. Turner pp. 10-

11; Testimony of Det. Nault p.29 attached to Plaintiffs' Statement of Material Facts Not in

Dispute cited in paragraphs 74, 77, 96.

151.    Nor did any of the defendants possess information that was omitted from the

44

affidavits that, had it been included, would have undermined the existence of probable cause. See Nault Aff at ¶ 32-33; O'Connor Aff. at ¶ 17-18; Szamocki Aff. at ¶ 17; Turner Aff. at ¶ 10; Gibeault Aff. at ¶ 8.

DENY. Testimony of Charles Collins pp.80-81, 93, 98-101, 111-113; Testimony of Szamocki pp. 104-105, 111-112, 157, 158, 163-166, 195; Testimony of Debra Collins p.90, 94, 98; Testimony of Adam Auclair p.8, 56, 97-98; Testimony of Aaron Auclair p.118, Marion Depo p. 30, 34, 35, 42-44, White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95, Sheriff's Code of Ethics excerpts; Bourgeois Depo pp 75-76; Det. O'Connor Report dated 8/9/99 and 6/12/99[sic]; Testimony Sgt. Turner p. 5, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99; Testimony of Adam Auclair p.27, 37, 40; White Depo p. 69; Testimony Det. Nault pp. 18, 19, 21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-3(9)(Rev.1999); all attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46, 47, 48, 49, 50, 52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125.

152. The focal point of plaintiffs' challenge to the affidavits is that the room in which the interview between the Auclairs and Gloria Marion occurred on July 16, 1999 was not locked, and therefore that the Auclairs were not physically restrained during that interview. The complaint makes much of this point, alleging that the affidavits were faulty because:

- "the Auclairs were neither abducted nor restrained as a second exit door was located behind the Auclairs during the aforesaid July 19, 1999 meeting, thus allowing the Auclairs to leave the room at any time."

- "the Auclairs were neither abducted nor restrained as the aforesaid second exit

45

door was not locked."

- "the Auclairs were neither abducted nor restrained as the aforesaid second door was not capable of being locked."

- "the Auclairs were neither abducted nor restrained as the door in the room adjacent to the aforesaid second exit door was not capable of being locked."

- "the Auclairs were neither abducted nor restrained as the aforesaid second exit door may not have been closed."

- "the Auclairs were neither abducted nor restrained as Plaintiff Marion was sitting at a desk across from the two Auclairs; and the exit door was directly behind them."

- "the Auclairs were neither abducted nor restrained as Plaintiff Marion never prevented them from leaving the aforesaid meeting."

See Amended Complaint at ¶ 24(c)-(m)

      DENY. See Amended Complaint.

153.    It is clear from the record that the meeting referenced in the Amended Complaint occurred on July 16, 1999, and not July 19, 1999. The meeting on July 19, 1999 was the only meeting at which Gloria Marion met with both Auclairs simultaneously. See, e.g., White, Bourgeois and Marion Affs. at ¶ 47.

      ADMIT

154.    In fact, the warrant affidavits do not omit the fact that the door may have been unlocked. See White, Bourgeois and Marion Affs. at ¶ 48.

      DENY. See White, Bourgeois and Marion Affidavits In Support Of Arrest Warrants. This qualified "statement" is confusing and fails to set forth that the door could not be locked at all.

155.    Rather, the affidavits simply recount what the Auclairs stated about the door.  In

particular (see Nault Aff. at ¶¶ 34-35), the warrants stated:

- According to Aaron Auclair, "[i]n the lock up area Lt. Marion sat behind a desk and we
  sat in front of her and there are two doors leading to the area.  One locked door was
  directly behind Lt. Marion and the second ***unlocked*** door was behind us."  See White,
  Bourgeois and Marion Aff. at ¶ 48.  (emphasis added); Aaron Auclair statement July 21,
  1999..

- Adam's statement discusses the meeting in the lockup of the Valley Street courthouse on
  July 16, 1999 with himself, Aaron and Gloria Marion.  Adam stated only that the door
  behind Marion locks automatically and that the keys were in Marion's desk drawer.  See
  White, Bourgeois and Marion Affs. at ¶ 34; Adam Auclair Statement, July 20, 1999..

ADMIT

155.    When confronted at his Deposition by the statement in the affidavits regarding the

unlocked door, plaintiff White admitted that the affidavits were truthful in this respect:

Q:  About halfway down on page 38, paragraph 48, it [the affidavit] says, "One locked
door was directly behind Lieutenant Marion, and the second unlocked door was behind them [the
Auclairs]?...is it fair to say based on this sentence that I just read to you in        paragraph 48,
that Trooper O'Connor and Trooper Nault gave the court the correct information about the doors
being unlocked during that meeting?

A:  Based on that one sentence that you read me?  Yes

Q:  So, whichever state police officer prepared this affidavits and submitted it to
a judge, told the judge that one locked door was directly behind Lieutenant
Marion, the second    unlocked door was behind them [the Auclairs], correct?

A:  Correct.  That Aaron and Adam had told them that, yes.

See White Depo at ¶ 99-101.

DENY.  This contradicts sections of the affidavit that say both doors were locked.  If, in

fact, the affiants intended to convey that the exit door was unlocked, there was no basis for the

warrants at all.  See White, Bourgeois and Marion Affidavits In Support Of Arrest Warrants.

156.   Russell Downer, a former Special Deputy Sheriff familiar with the room in question, testified as follows in his Deposition:

Q: Okay. Now the door where the interview took place that you were asked about, I mean where the interview took place where you were asked about, you mentioned it could be locked. Correct?

A: Yes.

Q: Now, what I wasn't able to understand from the questioning was whether there was any circumstances where you could be in the office but locked in and couldn't get out through either of the two doors?

A: Okay, the doorway leading into that room from the staircase, which would be coming out of the court, I do not believe you could be locked in that room without putting a key in and locking a deadbolt.

Q: What side of the door would you have been on to put the key in and lock the dead bolt?

A: The inside.

Q: The inside. So, if you didn't have the key and the dead bolt was locked, you could be locked in that door?

A: No, I don't believe, I don't believe, you could be locked in from that side.

Q: All right, I'm confused Mr. Downer, you mentioned there is a dead bolt that locks with a key

A: Correct.

Q: If there were two people in the room, one person, person A, has the key, locks the door, puts the key in her pocket or his pocket, person B doesn't have the key, is that person then locked in that room?

A: Yes.

Q: Okay, now, what about the other door? That's the door we've been talking about, the door that goes up to the courtroom. Correct?

A: That's the door we were just referring to.

48

Q:  What about the other door is it possible to be locked in and unable to get out of that door?

A:  Yes.  That's automatically locked door that only opens with a key.

Q:  Okay, and if you didn't happen to have that key, you could be locked in and not able to get out of that door as well.  Correct?

A:  Correct.

Q:  The keys you talked about, that we've talked about, getting in and out of that interview room downstairs, would every special deputy sheriff have a set of those keys on his person at all times?

A:  No.  Only those that were assigned to the lockup.  Only for the event that someone would lose their keys.  The general public couldn't come down there at any time.

Q:  So, were special deputy sheriffs instructed not to take those keys out of the lockup area?

A:  When there were inmate in there, yes, and the supervisor may have had a key to that door.

Q:  So, the supervisor might always have had, during work hours, a key on his or her person?

A:  Yes.

Q:  If somebody was working security at the door, for example, or prisoner transport, would that person have a key on this person at that time?

A:  To get into that area, no.

See Downer Depo. at 55-66.

ADMIT that Russell Downer testified as provided, but not to the truth of the

matter testified therein.  See Nault Testimony, p. 29; Adam Auclair Testimony, p. 40; Statement

of Aaron Auclair; all attached to Plaintiffs' Statement of Material Facts Not in Dispute and

49

Memorandum In Support Of Motion For Summary Judgment cited in paragraphs 67, 74, 96.

157.    The Auclairs were not assigned to the lock up area on July 16, 1999 and would not, therefore, have had keys to the door in question. <u>See</u> White, Bourgeois and Marion Affs. at ¶ 34, 36, 37, 47, 48, 52.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

158.    Plaintiffs cite only one other specific factual omission from the warrant affidavits – that the Auclair boys were eating pizza at the meeting with Marion on July 16, 1999. <u>See</u> Amended Complaint.

DENY. Testimony of Charles Collins pp. 80-81, 93, 98-101, 111-113; Testimony of Szamocki pp. 104-105, 111-112, 15'', 158, 163-166, 195; Testimony of Debra Collins p.90, 94, 98; Testimony of Adam Auclair p.8 56, 97-98; Testimony of Aaron Auclair p.118; Marion Depo p. 30, 34, 35, 42-44, White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95, Sheriff's Code of Ethics excerpts; Bourgeois Depo pp 75-76; Det. O'Connor Report dated 8/9/99 and 6/12/99[sic]; Testimony of Sgt. Turner p. 6, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99; Testimony of Adam Auclair p. 27, 37, 40; White Depo p. 69; Testimony Det. Nault pp. 18, 19, 21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-3(9)(Rev.1999); all attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46, 47, 48, 49, 50, 52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125.

159.    However, neither Auclair mentioned anything about pizza to the State Police, and it was simply not known to the State Police at the time that the warrant affidavits were prepared

or submitted to the court.  See Nault Aff at ¶ 37; O'Connor Aff. at ¶ 21; Szamocki Aff. at ¶ 19;

Turner Aff. at ¶ 14; Gibeault Aff. at ¶ 12.

DENY.  Testimony Adam Auclair, pp. 30-36, 38, 39-40, 49, 76, 83-89, 92-96;

attached to attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum

In Support Of Motion For Summary Judgment cited in paragraph 62.

159.    The Auclairs statements  to the State Police make no mention of Tom White, on

July 20, 1999, asking them to reconsider their resignations, informing them they were good

employees or expressing concern about how their resignation would affect their financial status.

See Aaron Auclair Statement of July 20, 1999; Aaron Auclair Statement of July 21, 1999; and

Adam Auclair statement of July 20, 1999.

ADMIT

160.    Plaintiffs point to no other specific factual deficiencies in the affidavit.  Instead,

plaintiffs allege in the complaint that the affidavits failed to allege certain necessary factual

elements of the charged offenses.  See, e.g., Amended Complaint at ¶ 24(n)(Defendants allegedly

omitted from affidavit "fact" that "no evidence existed that either plaintiff Marion or Bourgeois

knew or believed plaintiff White had committed a Class A or B felony, which is an essential

element of the crime of hindering prosecution.").

DENY.  See Amended Compl. at ¶ 24; Statement of Adam Auclair 97-98; Nault

report; Meisler letter; Transcript of Szamocki, pp. 104-05, pp.132-134, 195; Nault Testimony,

pp. 29, 84,90; White memo; White Depo p. 27; 8/9/99 O'Connor report; Plaintiffs' Statement of

Material Facts Not in Dispute at paragraphs 14, 16-18, 33, 37, 52, 53, 96.

51

161.    The State Police simply included in the affidavits the evidence they did had and presented it for review to a prosecutor, who approved the affidavits, and then to a judge, who signed them. See Nault Aff. at ¶ 38, 41-43; O'Connor Aff. at ¶ 22.

DENY. Testimony Charles Collins pp.80-81, 93, 98-101, 111-113; Testimony Szamocki pp. 104-105, 111-112, 157, 158, 163-166, 195; Testimony Debra Collins p.90, 94, 98; Testimony of Adam Auclair p.8, 56, 97-98; Testimony of Aaron Auclair p.118, Marion Depo p. 30, 34, 35, 42-44; White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95; Sheriff's Code of Ethics excerpts; Bourgeois Depo , pp 75-76; Det. O'Connor Report dated 8/9/99 and 6/12/99[sic]; Testimony Sgt. Turner p. 5, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99; Testimony of Adam Auclair p.27, 37, 41; White Depo p. 69; Testimony Det. Nault pp. 18, 19, 21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-3(9)(Rev.1999); all attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46, 47, 48, 49, 50, 52.53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125 of Plaintiffs' Statement of Material Facts Not In Dispute.

162.    Other than the issues of the door and the pizza, therefore, plaintiffs' complaints about the affidavit are really legal determinations about the factual sufficiency of the evidence. See Amended Complaint.

DENY. Testimony of Charles Collins pp.80-81, 93, 98-101, 111-113; Testimony of Szamocki pp 104-105, 111-112, 157, 158, 163-166, 195; Testimony of Debra Collins p.90, 94, 98; Testimony of Adam Auclair p. 8, 56, 97-98; Testimony of Aaron Auclair p 118, Marion Depo p 30, 34, 35, 42-44; White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95; Sheriff's

52

Code of Ethics excerpts; Bourgeois Depo pp 75-76; Det. O'Connor Report dated 8/9/99 and

6/12/99[sic]; Testimony Sgt. Turner p. 5, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99;

Testimony of Adam Auclair p.27, 37, 43; White Depo p. 69; Testimony Det. Nault pp. 18, 19,

21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-

3(9)(Rev.1999); and Memorandum of Decision dated 1/10/2000 marked as Exhibit 39; all

attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum In Support

Of Motion For Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46,

47, 48, 49, 50, 52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125, 132.

163.    If necessary factual elements of proposed charges were not supported by the

affidavits, it was the responsibility of the State's Attorney and the court to reject the warrants.

See Nault Aff. at ¶ 38; O'Connor Aff. at ¶ 22; Coe Aff. at ¶ 16-17.

DENY. Statement is a Conclusion of Law not a Fact. See also, Bourgeois Depo

pp. 78, 85-88; Szamocki Testimony p 134; cited in paragraphs 19 of Plaintiffs' Statement of

Material Facts Not In Dispute.

## J.    The Role Of Each Defendant In Preparing The Warrant Affidavits

164.    The portions of the three warrant affidavits for the arrest of plaintiffs on the

charges at issue in this case were prepared by Detective Nault, under the direct supervision of

State's Attorney Mark Solak. See Nault Aff. at ¶ 38-45; O'Connor Aff. at ¶ 7.

DENY. Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-

81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault

Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80,

97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material facts Not In Dispute.

165    Thus it was Attorney Sclak, not the supervisory defendants, approved the warrant

affidavits.  See Nault Aff. at ¶ 38-45; Szamocki Aff. at ¶17; Turner Aff. at ¶ 8-9; Gibeault Aff.

at ¶ 6.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-

81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p .66, 109, 112; Gibeault

Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80,

97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of material Facts Not In Dispute.

166.    On September 10, 1999, Trooper Karen O'Connor signed the warrant affidavit

seeking the arrest on Thomas White on a number of charges, including larceny and charges

relating to witness tampering and obstruction of justice.  See O'Connor Aff. at ¶ 7.

ADMIT

167.    Trooper O'Connor personally prepared the sections of that affidavit concerning

the larceny charge.  See O'Connor Aff. at ¶ 7.

ADMIT

168.    As to the sections of the affidavit that concerned witness tampering and

obstruction of justice-related conduct, she incorporated language that had been prepared by

Norman Nault under the supervision of State's Attorney Mark Solak as described below.  See

O'Connor Aff. at ¶ 7.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

169.    Detective Nault gave Trooper O'Connor a computer disk with those sections,

which allowed her to incorporate them into her affidavit for the arrest of Thomas White.  See

O'Connor Aff. at ¶ 7.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

170.    Because Detective Nault had conducted the tampering and obstruction-related aspects of the investigation, Trooper O Connor relied on his knowledge in preparing those sections of the affidavit. <u>See</u> O'Connor Aff. at ¶ 7, 17.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

171.    Her affidavit states explicitly that it was based on my own investigative efforts and those of fellow officers who reported their findings to me. <u>See</u> White Aff. at ¶ 1; O'Connor Aff. at 7.

ADMIT

172.    It is proper and standard police procedure for one investigator to include in a warrant affidavit the findings of another investigator who has direct knowledge of aspects of the case, particularly, as here, when that case is complex and involves related, but separate components. <u>See</u> O'Connor Aff. at ¶ 8

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

173.    In some complex investigations, such as this one, it is simply impossible for one investigator to have personal knowledge of all the facts of a case. <u>See</u> O'Connor Aff. at ¶ 8.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

174.    The remaining defendants had no personal involvement in drafting or approving the aspects of the warrant affidavits at issue in this case. <u>See</u> Nault Aff. at ¶ 38-45; Szamocki Aff. at ¶17; Turner Aff. at ¶ 8-9; Gibeault Aff. at ¶ 6.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

55

175.    With regard to the investigation of the plaintiffs for witness tampering and obstruction of justice-related offenses, defendant Szamocki did not participate in any way, as a supervisor or otherwise, in drafting or approving the warrant affidavits, making probable cause determinations or submitting warrants to the court.  <u>See</u> Szamocki Aff. at ¶ 17.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134,    156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103,110-11, 120, 122 of Plaintiffs' Statement of Material facts Not In Dispute.

176.    By the time those acts were performed, he no longer had a direct or substantive involvement in the investigation.  <u>See</u> Szamocki Aff. at ¶ 17.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

177.    Sergeant Turner did not approve the affidavits.  <u>See</u> Turner Aff. at 8-9.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

177.    Nor did Turner take the oaths of the affiants, as he felt it would be inappropriate to do so in light of my acquaintance with Henry Bourgeois from his days as a state police officer. <u>See</u> Turner  at ¶ 9.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

178.    In fact, he does not recall reading any part of the affidavits prior to their submission to the court.  <u>See</u> Turner Aff. at ¶ 9.

56

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

179.    Lieutenant Gibeault did not have any role in drafting the warrants for the arrests of the plaintiffs on crimes relating to witness tampering and obstruction of justice.  See Gibeault Aff. at ¶ 6.

DENY. Gibeault Testimony pp. 56, 58, 57 and cited in paragraph 99 of Plaintiffs Material Facts Not In Dispute.

180.    Nor did Gibeault review the warrants for substance prior to their submission to the court.  See Gibeault Aff. at ¶ 6.

DENY. Gibeault Testimony pp. 56, 58, 57 and cited in paragraph 99 of Plaintiffs of Material Facts Not In Dispute.

181.    Gibeault's only involvement with the affidavits was to take Detective Nault's oath on the affidavit in support of the warrant for the arrest of Henry Bourgeois.  See Gibeault Aff. at ¶ 6.

DENY. Gibeault Testimony pp. 56, 57, 58 and cited in paragraph 99 of Plaintiffs Material of Material Facts Not In Dispute.

182.    That act, however, did not involve his attesting to the truth of the matters contained in the affidavit or the sufficiency of the investigation described in the affidavit.  See Gibeault Aff. at ¶ 6; Nault Aff. at ¶ 40.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

183.    Rather,  it simply consisted of administering an oath to Detective Nault, who swore that the contents of the affidavit were true and accurate to the best of *his* (Nault's) knowledge. See Gibeault Aff. at ¶ 6; Nault Aff. at ¶ 40.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

184.    Sergeant Thomas Wakely, a non-defendant, took Detective Nault's oath on the affidavit for Gloria Marion and Trooper O'Connor's oath on the White affidavit. See Nault Aff. at ¶ 40.

ADMIT

## K.    The Role Of The State's Attorney In Drafting The Affidavits And Identifying Appropriate Charges

185.    Mark Solak, the State's Attorney for Windham County, played a central role in supervising and reviewing the drafting of the warrant affidavits, selecting appropriate criminal charges and advising the State Police on the existence of probable cause for plaintiffs' arrests, and signing the actual charging documents that identified the charges against the plaintiffs. See Nault Aff. at ¶ 41-42; O'Connor Aff. at ¶ 25.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

186.    In particular, over two days in the end of August and/or the beginning of September of 1999, Attorney Solak supervised Detective Nault in preparing the arrest warrant affidavits at issue in this case as they pertained to obstruction of justice and witness tampering-related charges. See Nault Aff. at ¶ 42

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault

58

Testimony 11/16/99 pp 56 ,58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11 , 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

187.    Attorney Solak advised Detective Nault on the proper structure and factual progression of the affidavits.  See Nault Aff. at ¶ 42.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121and cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

188.    Attorney Solak actually sat with Detective Nault as he typed the affidavits.  See Nault Aff. at ¶ 42.

DENY.  Szamocki Testimony pp. 108, 109, 111-12, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4, 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

189.    After Nault typed each page of the affidavits, he showed it to Attorney Solak, who reviewed it and either suggested changes or approved it.  See Nault Aff. at ¶ 42.

DENY.  Szamocki Testimony pp. 108, 109, 111, 112, 116, 124, 126, 134, 156, 180-81, 196; Turner Testimony pp. 2-4 14, 15, 58; Nault Testimony p.66, 109, 112; Gibeault Testimony 11/16/99 pp 56, 58, 67, 68, 120, 121; all cited in paragraphs 19, 31, 32, 36, 76, 79, 80, 97, 98, 99, 100, 103, 110-11, 120, 122 of Plaintiffs' Statement of Material Facts Not In Dispute.

190.    Attorney Solak advised Detective Nault to err on the side of inclusion -- including witness statements in the affidavit in their entirety or near entirety.  See Nault Aff. at ¶ 34, 42.

59

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

191.    On September 10, 1999, after each affidavit was completed, Attorney Solak signed each page of all three 67-page affidavits. See Nault Aff. at ¶ 42; White Aff.; Marion Aff.; Bourgeois Aff.

ADMIT

192.    The three affidavits were identical in all respects except as to the name of the suspect. See Nault Aff. at ¶ 42; White Aff.; Bourgeois Aff.; Marion Aff.

ADMIT

193.    In addition to his participation in drafting the affidavits, Attorney Solak identified the charges that were, in his view, supported by the evidence set forth in the affidavits. See Nault Aff. at ¶ 42; O'Connor Aff. at ¶ 26.; White Information (Defendants' Exhibit R; Marion Information (Defendants' Exhibit S); Bourgeois Information (Defendants' Exhibit T).

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

194.    Attorney Solak, after reviewing the affidavits, told Detective Nault that the elements of each such charge were established in the affidavits, and therefore that probable existed for the plaintiffs arrest on those charges. See Nault Aff. at ¶ 43.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

195.    Attorney Solak signed the charging documents, known as "informations" (or warrant "face sheets"), which were submitted with the affidavits to the Superior Court bearing Solak's signature. See Nault Aff. at ¶ 44; O'Connor Aff. at ¶ 26; White Information; Marion Information; Bourgeois Information.

ADMIT

60

196.    In signing the informations, Attorney Solak attested that "[t]he undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office complains, Deposes, and alleges that said Deputy Assistant State's Attorney has reason to believe and does believe that" the plaintiffs committed the offenses charged in the informations. See Nault Aff. at ¶ 44; O'Connor Aff. at 26; White Information; Marion Information; Bourgeois Information.

ADMIT

197.    It is important to note that none of the assistance provided by Attorney Solak in preparing the warrants and identifying appropriate charges was unusual or in any way improper. See Nault Aff. at ¶ 45; O'Connor Aff. at ¶ 27; Coe Aff. at ¶ 17.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

198.    To the contrary, as the prosecuting authority, the State's Attorneys Office routinely provides this sort of assistance to state and local police agencies. See Nault Aff. at ¶ 45; O'Connor Aff. at ¶ 27; Coe Aff. at ¶ 17.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

199.    It should also be pointed out that neither Detective Nault nor Trooper O'Connor is a trained lawyer. See Nault Aff. at ¶ 38; O'Connor Aff. at ¶ 22.

ADMIT

200.    Detective Nault included in his affidavits the facts that had been gathered during the investigation. See Nault Aff. at ¶ 38; O'Connor Aff. at ¶ 22.

DENY. Testimony Charles Collins pp.80-81, 93, 98-101, 111-113; Testimony Szamocki pp. 104-105, 111-112, 157, 158, 163-156, 195; Testimony Debra Collins p.90, 94, 98; Testimony

of Adam Auclair p.8, 56, 97-98; Testimony of Aaron Auclair p.118, Marion Depo p. 30, 34, 35,

42-44; White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95, Sheriff's Code of Ethics

excerpts; Bourgeois Depo , pp 75-76; Det. O'Connor Report dated 8/9/99 and 6/12/99[sic];

Testimony Sgt. Turner p. 6, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99; Testimony of

Adam Auclair p.27, 37, 40; White Depo p. 69; Testimony Det. Nault pp. 18, 19, 21, 29, 46, 47,

50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-3(9)(Rev.1999); and

Memorandum of Decision dated 1/10/2000 marked as Exhibit 39; all attached to Plaintiffs'

Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For

Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46, 47,48, 49, 50,

52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125, 132 of Plaintiffs' Statement of

Material Facts Not In Dispute.

201.    If there were legal, as opposed to factual, infirmities in the arrest warrants

affidavits undermining the existence of probable cause, it was the role of the State's Attorney and

the judge to detect those infirmities and refuse to seek or issue the arrest warrants.  See Nault

Aff. at ¶ 38; O'Connor Aff. at ¶ 22.

DENY. Statement is a Conclusion of Law not a Fact.  See Bourgeois Depo pp. 78,

85-88; Szamocki Testimony p 134; cited in paragraph 19 of Plaintiffs' Statement of Material

Facts Not In Dispute.

202.    Neither the State's Attorney nor the judge concluded that any such legal

infirmities existed in this case.  See Nault Aff. at ¶ 38; O'Connor Aff. at ¶ 22.

ADMIT

L.    **The Signing Of The Warrants By A Neutral Magistrate And The Arrests Of The**

### Plaintiffs On Witness Tampering And Related Charges

203.    On September 10, 1999, Detective submitted the warrants for plaintiffs' arrests on

charges relating to witness tampering and obstruction of justice to Hon. Michael Mack.[1]  See

Nault Aff. at ¶ 46-47; O'Connor Aff. at ¶ 28-29; White Aff.; Marion Aff.; Bourgeois Aff.

ADMIT

204.    Attorney Solak drafted the charging documents ("informations") that

accompanied those affidavits, identifying appropriate charges based on the facts contained in

affidavits. See Nault Aff. at 44; O'Connor Aff. at ¶ 26.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

205.    On September 10, 1999, Judge Mack thoroughly reviewed each affidavit over a

period of several hours and found that probable cause existed based on the facts in the affidavits

for the arrest of the plaintiffs on the charges identified by Attorney Solak.  See Nault Aff. at ¶ 46-

47; O'Connor Aff. at ¶ 28-29; White Aff.; Marion Aff.; Bourgeois Aff.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

206.    Judge Mack expressed no concerns whatsoever about the adequacy of the

affidavits or the existence of probable cause.  See Nault Aff. at ¶ 46-47; O'Connor Aff. at ¶ 28-

29; White Aff.; Marion Aff.; Bourgeois Aff.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

207.    In signing the warrants, Judge Mack affirmed that: "The foregoing Application

for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and

---

[1] Plaintiff White was arrested a second time on a separate application in January of 2000 for additional charges relating to embezzlement and unlawful election practices, but that second arrest is not challenged in, or relevant to, this case. See Nault Aff. 46, n. 1; Amended Complaint.

63

considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused." See Nault Aff. at ¶ 46-47; O'Connor Aff. at ¶ 28-29; White Aff.; Marion Aff.; Bourgeois Aff.

ADMIT

208.    The information filed by Attorney Solak against Thomas White charged him with the following crimes: larceny by embezzlement in violation of Conn. Gen. Stat. § 53a-124 (Counts 1 and 2 – not at issue in this case); accessory to tampering with a witness in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-151 (Count 3 and 4); accessory to unlawful restraint in the second degree in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-96 (Counts 5 and 6); accessory to bribery of a witness in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-149 (Count 7); accessory to hindering prosecution in the second degree in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-167 (Count 8); criminal conspiracy in violation of Conn. Gen. Stat. § 53a-48 (Count 9); accessory to coercion in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-192(c) (Count 10); and racketeering in violation of Conn. Gen. Stat. § 53-395(c). See Nault Aff. at ¶ 48; White Information.

ADMIT

209.    Thomas White was permitted to turn himself in for arrest at the State Police Troop D barracks in Danielson, Connecticut on September 13, 1999. See Nault Aff. at ¶ 49.

ADMIT

210.    A non-surety bond of ten thousand dollars was set, and, after being processed,

White was released pending arraignment.  See Nault Aff. at ¶ 49.

>ADMIT

211.    The information filed by Attorney Solak against Gloria Marion charged her with

the following crimes:  tampering with a witness in violation of Conn. Gen. Stat. § 53a-151

(Counts 1 and 2); unlawful restraint in the second degree in violation of Conn. Gen. Stat. § 53a-

96 (Counts 3, 4, 5, 6, 7, 8); bribery of a witness in violation of  Conn. Gen. Stat. § 53a-149

(Count 7); criminal conspiracy in violation of Conn. Gen. Stat. § 53a-48 (Count 8); coercion in

violation of Conn. Gen. Stat. § 53a-192(c) (Counts 9 and 10).  See Nault Aff. at ¶ 50, Marion

Information.

>ADMIT

212.    Gloria Marion was arrested at her home and processed at the State Police Troop D

barracks in Danielson, Connecticut on September 13, 1999.  See Nault Aff. at ¶ 51.

>ADMIT

213.    A non-surety bond of ten thousand dollars was set and made, and, after

processing, Marion was released pending arraignment.  See Nault Aff. at ¶ 51.

>ADMIT

214.    The information filed by Attorney Solak against Henry Bourgeois charged him

with the following crimes:  criminal conspiracy in violation of Conn. Gen. Stat. § 53a-48 (Count

1); accessory to tampering with a witness in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-151

(Counts 2 and 3); hindering prosecution in the second degree in violation of Conn. Gen. Stat. §

53a-167 (Count 4);  coercion in violation of Conn. Gen. Stat. § 53a-192(a) (Counts 5 and 6);

accessory to unlawful restraint in violation of Conn. Gen. Stat. §§ 53a-8 and 53a-96.  See Nault

Aff. at ¶ 52; Bourgeois Information.

ADMIT

215.    Henry Bourgeois was in New Jersey when the warrant for his arrest was signed. A decision was made not to seek his arrest in New Jersey and extradition, but rather to await his return to Connecticut to arrest him. See Nault at ¶ 53.

ADMIT

216.    Upon returning to the state, Bourgeois turned himself in for arrest at the State Police Troop D barracks in Danielson, Connecticut on September 15, 1999. See Nault at ¶ 53.

ADMIT

217.    A non-surety bond of ten thousand dollars was set, and, after being processed, Bourgeois was released pending arraignment.    See Nault at ¶ 53.

ADMIT

218.    Attorney Solak later filed substitute long form informations, which added additional charges against each plaintiff in this case. See Nault Aff. at ¶ 54.

ADMIT

219.    In accordance with state criminal practice, that substitute information was not required to be supported by an additional factual affidavit. See Nault Aff. at ¶ 54.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

220.    Rather, it simply reflected Attorney Solak's judgment that additional charges were warranted under the facts alleged in the original arrest warrant application. See Nault Aff. at ¶ 54.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

66

221.    Thus, the State Police had no role in filing the substitute informations lodged against the plaintiffs.  <u>See</u> Nault Aff. at ¶ 54.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

**M.    The Decision Not To Interview The Plaintiffs Prior To Their Arrests**

222.    Detective Nault determined for very specific investigatory reasons not to seek to interview the plaintiffs prior to seeking warrants for their arrests.  <u>See</u> Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

223.    In particular, he determined that Thomas White would simply not offer any useful information.  <u>See</u> Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

224.    That determination was based in part upon the Trooper O'Connor's conclusion that Thomas White was not candid or forthcoming in the investigation of him for possible financial and election practices crimes.  <u>See</u> Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

225.    Moreover, White had already retained counsel, and Detective Nault believed that counsel would not permit his client to consent to any meaningful pre-arrest questioning.  <u>See</u> Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

226.    As to plaintiff Bourgeois, Detective Nault believed that he would use his experience as a State Police officer to frustrate any attempts during an interview to obtain meaningful information  <u>See</u> Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

67

227.    Thus, with regard to plaintiffs White and Bourgeois, Detective Nault concluded that the risks to the investigation of conducting such pre-arrest interviews – namely the potential for revealing sources, evidence, theories and/or methods – outweighed the likely benefits of such interviews.  See Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

228.    Detective Nault did intend to attempt to interview plaintiff Marion, but decided that an interview immediately after her arrest would be the most fruitful, as she would likely be motivated at that time to provide useful evidence against Thomas White and Henry Bourgeois. See Nault Aff. at ¶ 55.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

229.    As it turned out, Marion obtained counsel immediately after her arrest and no such interview was permitted by counsel.  See Nault Aff. at ¶ 55.

ADMIT

## N.    Subsequent Proceedings, The Coe Report And The Disposition Of The Charges

230.    On June 28, 2000, Attorney Glenn Coe was appointed and sworn in as Special Assistant State's Attorney for purposes of investigating and prosecuting the pending criminal cases against the plaintiffs:  State v. Thomas White, CR 99-106088/CR00-107163 (J.D. Rockville); State v. Gloria Marion, CR 99-106081 (J.D. Rockville); and State v. Henry Bourgeois, CR 99-106135 (J.D. Tolland).   See Coe Aff. at ¶ 5; Coe Report.

ADMIT

231.    Attorney Coe's appointment was a result of a decision by the Hon. Jonathan

68

Kaplan to disqualify Mark Solak and the Office of the State's Attorney for Windham County from the afore-mentioned cases. See Coe Aff. at ¶ 6; Coe Report.

>ADMIT

232.    Judge Kaplan also ordered that the Office of the Chief State's Attorney investigate whether grounds existed for the criminal prosecution of perjury of two witnesses, Aaron and Adam, relating to their testimony in the hearings held on the issue of disqualification. See Coe Aff. at ¶ 6; Coe Report.

>ADMIT

233.    In addition, Judge Kaplan ordered an investigation into whether any person, including Assistant State's Attorney Debra Collins, had committed criminal misconduct in connection with the reported shredding of state documents, possible misuse of a state fax machine, and destruction of computer records in the Windham County Sheriff's Department. See Coe Aff. at ¶ 6; Coe Report.

>ADMIT

234.    Attorney Coe investigated the issues requested by Judge Kaplan as part of my overall investigation in connection with the prosecutions of Thomas White, Gloria Marion, and Henry Bourgeois. See Coe Aff. at ¶ 6; Coe Report.

>ADMIT

235.    His investigation was thorough and exhaustive, consisting of over ninety interviews and the review of hundreds of documents. See Coe Aff. at ¶ 7; Coe Report.

>DENY *See* Affidavit of Attorney Pamala J. Favreau ¶¶ 10-12, 14 attached as Exhibit A4 hereto.

236.   In particular, he reviewed documents provided by the Office of the State's Attorney for Windham County, the Office of the Chief State's Attorney, the Connecticut State Police, the Windham County Sheriff's Department and others.   See Coe Aff. at ¶ 7; Coe Report.

DO NOT HAVE SUFFICIENT FACTS TO ADMIT OR DENY

237.   Attorney Coe issued a comprehensive report on July 25, 2001, setting forth my conclusions.   See Coe Aff. at ¶ 8; Coe Report.

ADMIT

238.   His conclusions can be summarized as follows:  (1) the obstruction of justice and witness tampering-related charges against Thomas White, Henry Bourgeois and Gloria Marion would be nolled;  (2) sufficient evidence existed to support a prosecution of Thomas White for larceny by embezzlement;  (3) racketeering counts against Thomas White based on obstruction of justice and corrupt election practices would be nolled; and, while legally sufficient, racketeering counts against Thomas White based on larceny would be nolled as duplicative;  (3) sufficient evidence did not exist to prosecute either Adam or Aaron Auclair for perjury;  (4) no probable cause existed to arrest and prosecute Debra Collins or any other person for shredding of state documents, possible misuse of a state fax machine, and destruction of computer records relating to the Windham County Sheriff's Department; and (5) the Connecticut State Police .   See Coe Aff. at ¶ 8; Coe Report.

ADMIT

239.   Attorney Coe later consented to the dismissal of the obstruction of justice and witness tampering-related charges against Thomas White, Gloria Marion and Henry Bourgeois. See Coe Aff. at ¶ 9.

70

ADMIT

240.    Attorney Coe also specifically concluded that, based on the information produced during the hearings before Judge Kaplan and during my investigation, Connecticut State Police acted entirely properly in investigating and drawing up warrant affidavits for the arrest of the Thomas White, Gloria Marion, and Henry Bourgeois. See Coe Aff. at ¶ 11; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

241.    Attorney Coe's conclusion that obstruction of justice and witness tampering-related prosecutions should not be pursued against Thomas White, Gloria Marion and Henry Bourgeois was based in large measure on problems with the credibility of Adam Auclair and, to a lesser degree, Aaron Auclair, both of whom would be the crucial witnesses in the State's case. See Coe Aff. at ¶ 11; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

242.    Because the Auclairs were, in effect, the victims, their credibility was particularly important to successful prosecutions. See Coe Aff. at ¶ 11; Coe Report.

ADMIT

243.    Attorney Coe does not believe that the Connecticut State Police knew or should have known, at the time that they prepared and submitted arrest warrant affidavits relying in large measure on the Auclairs' statements, that the Auclairs were unreliable witnesses. See Coe Aff. at ¶ 12; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

244.    Attorney Coe is aware of no information that would have called the Auclairs' credibility into question at the time the warrant affidavits were prepared. See Coe Aff. at ¶ 12;

71

Coe Report.

DENY. <u>See</u>, Testimony of Adam Auclair p 40; Testimony of Sgt. Turner pp. 10-11; Testimony of Det. Nault p.29; all attached to Plaintiffs' Statement of Material Facts Not in Dispute cited in paragraphs 74, 77, 79.

245.    In Attorney Coe's opinion, concerns about the credibility of the Auclairs arose after the arrest of White, Bourgeois and Marion, during disqualification hearings before Judge Kaplan. <u>See</u> Coe Aff. at ¶ 12; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

246.    In particular, Attorney Coe does not believe the Connecticut State Police knew or should have known at the time they prepared the warrant affidavits that Adam and Aaron Auclair were not locked in a room with Gloria Marion on July 16, 1999. <u>See</u> Coe Aff. at ¶ 13; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

247.    Nor does Attorney Coe believe that the Connecticut State Police knew or should have known at the time they prepared their warrant affidavits that the Auclairs were eating pizza at their meeting with Gloria Marion on July 16, 1999. <u>See</u> Coe Aff. at ¶ 13; Coe Report..

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

248.    Attorney Coe does not believe that the Connecticut State Police knew or should have known, at the time that they prepared the warrant affidavits, that *any* material information contained in those warrant affidavits was false. <u>See</u> Coe Aff. at ¶ 14; Coe Report..

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

249.    Nor does Attorney Coe believe that the Connecticut State Police possessed any

information that the omitted from their warrant affidavits that would have undermined probable cause to arrest Thomas White, Gloria Marion, and Henry Bourgeois. See Coe Aff. at ¶ 14; Coe Report.

<div align="center">DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY</div>

250.    Based on Attorney Coe's expertise as a prosecutor and my investigation, he does not believe that it was, or should have been, obvious to the Connecticut State Police that the warrant affidavits failed to provide probable cause for the arrest of Thomas White, Gloria Marion or Henry Bourgeois for crimes relating to obstruction of justice or witness tampering. See Coe Aff. at ¶ 15; Coe Report.

<div align="center">DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY</div>

251.    Nor, more generally, does Attorney Coe believe that the Connecticut State Police knew or should have known that their warrant affidavits were faulty in any material respect. See Coe Aff. at ¶ 15; Coe Report.

<div align="center">DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY</div>

252.    Based on his investigation, Attorney Coe believes that the State's Attorney Mark Solak gave poor legal advice to the Connecticut State Police regarding the existence of probable cause to arrest Mr. White, Ms. Marion and Mr. Bourgeois on obstruction of justice-related charges based on the facts gathered by the State Police. See Coe Aff. at ¶ 16; Coe Report.

<div align="center">DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY</div>

253.    According to Attorney Coe, Attorney Solak's advise, however, was not so obviously wrong that it should have been perceived as faulty by the Connecticut State Police at the time that they prepared and submitted to the court their warrant affidavits. See Coe Aff. at ¶

<div align="center">73</div>

16; Coe Report..

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

254.    In Attorney Coe's view, it was entirely reasonable of the Connecticut State Police

to rely upon the advice of State's Attorney Solak as to the existence of probable cause to arrest

Mr. White, Ms. Marion, and Mr. Bourgeois on obstruction of justice and witness tampering-

related charges.  See Coe Aff. at ¶ 16; Coe Report..

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

255.    Based on Attorney Coe's experience, his opinion is that it is entirely proper for

police officers to rely on prosecuting attorneys for advice on the existence or absence of probable

cause based on a given set of facts, as was done in this instance.  See Coe Aff. at ¶ 17; Coe

Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

256.    In Attorney Coe's experience, the exception would be where the facts are so

obviously insufficient to sustain the proposed charges that the insufficiency should be obvious

even to the average police officer.  See Coe Aff. at ¶ 17; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

257.    This was not the case here, according to Attorney Coe, as the affidavits were not

so obviously deficient as to alert the officers that probable cause was not present to arrest

Thomas White, Gloria Marion, and Henry Bourgeois on obstruction of justice and witness-

tampering related charges.  See Coe Aff. at ¶ 17; Coe Report.

ADMIT as much of Paragraph 257 states that this was not the case here according

to Coe. DENY remainder of paragraph.  See, Testimony Charles Collins pp.80-81, 93, 98-101,

111-113; Testimony Szamocki pp. 104-105, 111-112, 157, 158, 163-166, 195; Testimony of

Debra Collins p.90, 94, 98; Testimony of Adam Auclair p.8, 40, 56, 97-98; Testimony of Aaron

Auclair p.118, Marion Depo p. 30, 34, 35, 42-44, White memo dated 6/3/99; White Depo p. 27,

28, 31, 94-95, Sheriff's Code of Ethics excerpts; Bourgeois Depo , pp 75-76; Det. O'Connor

Report dated 8/9/99 and 6/12/99[sic]; Testimony Sgt. Turner p. 6, 8, 9, 10-12; Statement of

Aaron Auclair dated 7/21/99; Testimony of Adam Auclair p.27, 37, 40; White Depo p. 69;

Testimony of Det. Nault pp. 18, 19, 21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-

7(1999 Rev.) and 53a-3(9)(Rev.1999); all attached to Plaintiffs' Statement of Material Facts Not

in Dispute and Memorandum In Support Of Motion For Summary Judgment cited in paragraphs

15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 45, 47, 48, 49, 50, 52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80,

93, 94, 95, 96, 111, 125.

258.    Attorney Coe's conclusion that the Connecticut State Police acted properly is not,

in his view, in any way undermined by the fact that they did not interview Thomas White, Gloria

Marion and Henry Bourgeois prior to seeking their arrest.  See Coe Aff. at ¶ 18; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

259.    Valid investigative reasons often counsel against such pre-arrest interviews, and

there is no indication in this instance that such valid reasons did not exist in this instance.  See

Coe Aff. at ¶ 18; Coe Report.

DO NOT HAVE SUFFICIENT KNOWLEDGE TO ADMIT OR DENY

260.    Attorney Coe is aware of no evidence whatsoever that would remotely suggest

that the investigation by the Connecticut State Police of Thomas White, Gloria Marion, and

Henry Bourgeois was motivated by any improper motive.  See Coe Aff. at ¶ 18; Coe Report.

DENY. Testimony Charles Collins pp.80-81, 93, 98-101, 111-113; Testimony Szamocki pp. 104-105, 111-112, 157, 158, 163-166, 195; Testimony Debra Collins p.90, 94, 98; Testimony of Adam Auclair p.8, 40, 56 97-98; Testimony of Aaron Auclair p.118, Marion Depo p. 30, 34, 35, 42-44, White memo dated 6/3/99; White Depo p. 27, 28, 31, 94-95, Sheriff's Code of Ethics excerpts; Bourgeois Depo , pp 75-76; Det. O'Connor Report dated 8/9/99 and 6/12/99[sic]; Testimony Sgt. Turner p. 5, 8, 9, 10-12; Statement of Aaron Auclair dated 7/21/99; Testimony of Adam Auclair p.27, 37, 4); White Depo p. 69; Testimony Det. Nault pp. 18, 19, 21, 29, 46, 47, 50-53, 138; Connecticut General Statutes 29-7(1999 Rev.) and 53a-3(9)(Rev.1999) attached to Plaintiffs' Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For Summary Judgment cited in paragraphs 15, 16, 22, 23, 24, 25, 38, 39, 40, 41, 46, 47, 48, 49, 50, 52, 53, 54, 66, 69, 72, 73, 74, 75, 77, 80, 93, 94, 95, 96, 111, 125.

261.    The defendants conduct in connection with the investigation and arrest of the plaintiffs was entirely proper and was not motivated by malice, a desire to harm or retaliate against the plaintiffs or by any other improper motives. See Nault Aff. at ¶ 56; O'Connor Aff. at 32; Szamocki Aff. at ¶20; Turner Aff. at ¶ 15; Gibeault Aff. at ¶ 13.

DENY. See, Bourgeois Depo.; White Depo.; Marion Depo; Meisler Letter; Debra Collins Testimony pp.90, 91, 94, 98; Charles Collins Testimony pp 80-81, 93, 98-101, 111-113; Sgt. Szamocki Testimony pp 104-105, 109, 111-12, 132-34, 141, 153-66, 195-99; Lt.Gibeault Memo 7/19/99; Aaron Auclair Testimony p. 118; Det. O'Connor Report dated 6/21/99[sic]; Adam Auclair Testimony p. 40; Sgt. Turner Testimony pp 4, 6-11, 32-33; Nault Testimony pp 7, 9-10, 12-14, 16-19, 21, 29, 38, 46-47, 50-53, 94, 96, 137-38; Statement of Aaron Auclair dated

7/21/99; and Memorandum of Decision Re: Motion To Disqualify The Office of the State's

Attorney For The Windham Judicial District marked as Exhibit 39 and attached to Plaintiffs'

Statement of Material Facts Not in Dispute and Memorandum In Support Of Motion For

Summary Judgment cited in paragraphs 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 29, 30, 38, 50,

53, 56, 73, 74, 76, 78, 80, 82, 83, 84, 86, 87, 88, 89, 90, 91, 92, 93, 94-97, 101, 116, 118, 124,

125, 129, 132.

<div style="margin-left:40%;">

THE PLAINTIFFS – THOMAS WHITE,
HENRY BOURGEOIS AND GLORIA MARION

BY:

Jon L. Schoenhorn
Federal Bar No. ct00119
Jon L. Schoenhorn & Associates
97 Oak Street
Hartford, CT 06106
Tel: (860)278-3500
Fax: (860)278-6393

</div>

# CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, first class postage prepaid, or hand delivered in accordance with the Federal Rules of Civil Procedure on this 9th day of August, 2004, to the following counsel of record:

Perry Zinn Rowthorn, Esq.
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

_____
Jon L. Schoenhorn

F:\SHARED\CLIENTS\White, T\Pleadings\56(a)(2)

78