UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS WHITE, ET AL. | : | CIVIL ACTION NO. 3:02CV1589(WWE) |
|    *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORMAN NAULT, ET AL. | : | |
|    *Defendants* | : | August 23, 2004 |

**DEFENDANTS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

Defendants submit this memorandum in further support of their motions for summary judgment and in reply to plaintiffs' memorandum dated August 9, 2004. In an effort to deflect attention from the fatal flaws of their claims, plaintiffs put forth a hodge-podge of conclusory, irrelevant allegations and assertions, many of which do not appear in the complaint and none of which rebuts the central facts as set forth in defendants' motion and supporting materials: (1) defendants, as they are entitled to do in drafting their warrants, relied on the evidence of victims/witnesses Aaron and Adam Auclair and had no reason to believe that these witnesses were anything less than fully credible; (2) none of the falsehoods or omissions alleged in the amended complaint were known to the defendants when the warrants were prepared; and (3) Attorney Solak, who was aware of all facts relevant to the investigation, directly participated in drafting the warrant affidavits and expressly advised the State Police that probable cause existed to arrest the plaintiffs under the facts of the case. Plaintiffs cannot, therefore, state a claim for violation of any constitutional right. Nor can the they defeat defendants' qualified immunity defense, as "[t]he presumption in favor of finding qualified immunity is necessarily high, protecting all but the plainly incompetent or those who knowingly violate the law." Conn. Ex

Rel Blumenthal v. Crotty, 2003 U.S. App. Lexis 20041, * 46 (2d Cir. Sept. 30, 2003)).  Thus, for the reasons set forth in defendants' original memorandum and those discussed below, defendants' respectfully request that their motion for summary judgment be denied.

**I.      ARGUMENT**

   A.      Defendants were entitled to rely on the Auclair brothers.

As noted above and in defendants' original memorandum, police officials are entitled to rely on information of victims and seemingly credible witnesses in formulating probable cause determinations, just as the State Police did in this case by relying on the statements of the Auclair brothers.  See Defendants' Memorandum In Support of Summary Judgment at 51 (and authorities cited therein).  As set forth in defendants' original memorandum, the Auclair brothers appeared to be of unimpeachable credibility at the time of the incidents in question, a fact that even the plaintiffs themselves were forced to concede in their depositions.  Id. at 15-19. Interestingly, plaintiffs do not (and cannot) dispute this principle.  Nor do they cite a single piece of evidence to suggest that the State Police should not have trusted the Auclair brothers' statements.

Rather than disputing the fact of the Auclairs' apparent credibility, or the principle that officers are entitled to rely on such witnesses, plaintiffs offer this entirely unsupported, perplexing and misleading argument:

> The defendants also claim that 'the Auclair brothers possessed inherently greater reliability many witnesses upon whom criminal investigators must rely and that the defendants could presume their credibility.'[1]  This statement also contradicts the testimony given by these same affiants at an earlier date and is strongly contested by the plaintiffs.  See Plaintiffs SMFNID at ¶ 4, 5, 54, 69,73, 78, 80, 82, 83, 84; see also Affidavit of Attorney Pamela J. Favreau ¶ A4.

See Plaintiffs' Memorandum at 7. This is a reckless and misleading argument – upon examination, not a single one of the cited sources refers to any testimony given by the defendants about the Auclairs as plaintiffs seem to suggest; indeed none of the cited sources even arguably suggests that anybody, least of all the defendants, should have known that the Auclairs were unreliable. To take just one example, Paragraph 4 of Plaintiffs' SMNNID – cited as evidence that defendants somehow testified that the Auclairs were unreliable – actually reads as follows: "Plaintiff Henry Bourgeois became a state trooper in 1960. He became a sergeant in 1967, and later held the rank of State Police Lieutenant for 20 years, at one point serving as the commander of Troop D." Plaintiffs' SMFNID at ¶ 4. This is at best sloppy, and at worst an effort to mislead the court with regard to a key point in this case – the Auclairs were seemingly reliable witnesses at the time the State Police relied upon them. The actual record on this is clear and entitles defendants to summary judgment.

B.   Defendants relied on the advice of Attorney Solak.

Similarly, plaintiffs' memorandum offers nothing of substance to rebut the fact that the State Police relied on Attorney Solak in preparing the affidavit and that Attorney Solak specifically advised the State Police that probable cause existed based on the investigation and the facts contained in the warrant affidavits. See Defendants' Memorandum In Support of Summary Judgment at 35-37. Plaintiffs do not even dispute that Attorney Solak so advised the State Police. Rather, plaintiffs simply note in a footnote, apropos of nothing, that "a prosecuting attorney's advice on the existence or absence of probable cause is dependent on a given set of facts presented to him or her by the police." See Plaintiffs' Memorandum at 6, n. 3. Plaintiffs do not (and cannot) point to a single fact that any of the defendants withheld or misrepresented to

---

[1] While appearing in quotes, this actually paraphrases defendants' brief. See Defendants' Brief

3

Attorney Solak. Thus, the undisputed record is that Attorney Solak directly supervised Detective Nault on preparing the affidavits, directing what to include in the affidavits and how to structure them. See Nault Aff at ¶ 42. Most importantly, Attorney Solak advised Detective Nault that certain charges should be made and that the affidavits supported those charges. Plaintiffs do not and cannot argue that it would be unreasonable for Detective Nault to rely on the explicit advice of a prosecuting attorney regarding the existence of probable cause. Defendants are, therefore, entitled to qualified immunity.

    C.    <u>Defendants did not know that any of the alleged infirmities in the affidavit existed when the affidavits were prepared.</u>

Defendants also fail to dispute the arguments set forth at pages 51-54 of Defendants' Memorandum that the defendants did not knowingly include any material falsehoods, or make material omissions, in the warrant affidavits as alleged in the Amended Complaint. The Amended Complaint identifies three specific factual misrepresentations/omissions in the affidavits:

- That the door where the Auclairs met with Marion was not locked, and therefore that the Auclairs were not restrained; see Amended Complaint at ¶ 24(c)-(m);
- That the Auclairs were eating pizza at the meeting, and therefore that they were not under duress; <u>Id.</u>;
- That Thomas White urged the Auclairs not to resign. <u>Id</u>.

Defendants' memorandum and supporting evidence at pages 28-32 and 51-54, clearly demonstrate that none of the defendants were aware that the affidavits were false or incomplete on these points, and the court is respectfully cited to those sections of defendants' brief.

Rather than dispute these points, plaintiffs create a host of entirely new purported omissions or falsehoods in the affidavits in order to defeat summary judgment. <u>See</u> Plaintiffs'

---

at 19.

Memorandum at 10-16, none of which appear in the amended complaint. This effort to avoid summary judgment by creating brand new, 11th hour factual theories is improper and should be rejected. See, e.g., Fleming v. Lind-Waldock, & Co., 922 F.2d 20, 24 (1st Cir.1990) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings"); Visnikar v. D.E.P., 2004 U.S. Dist. Lexis 3645 (E.D. Pa. 2004)(party may not assert new factual theories not listed in complaint to avoid summary judgment); Vega v. Robertis, 584 F.Supp. 501, 508 (D. Ill. 1984)("Even under the liberal pleading doctrines embodied in the federal rules, a plaintiff cannot avoid summary judgment by asserting new facts and a new theory of injury on the eve of disposition of his original claim.")(citing Kelsey v. State of Minnesota, 565 F.2d 503, 507 (8th Cir. 1977). It would be unfair at this stage in the game, after the close of discovery, to allow plaintiffs to shift their theory to raise entirely new allegations.

In any event, even a cursory review of the newly discovered purported falsehoods or omissions reveals them to be red herrings:

- Plaintiffs allege that defendants were aware that the Sheriffs Department is a law enforcement agency and able to conduct internal affairs investigations, which is what they were doing when they interviewed the Auclairs. This is immaterial and misses the point: whatever the Sheriffs' Department's authority, they did not have the authority to tamper in an ongoing State Police investigation, which is what the State Police concluded had occurred. The warrant affidavits clearly indicate that the efforts by the plaintiffs to obtain information from the Auclairs was purported to be part of an internal sheriff's investigation, but was actually an effort to obtain information about the White embezzlement investigation. See, e.g., Warrant Affidavits at ¶ 57. Certainly, the State Police did not mislead the court in their warrant affidavits on this point.

- Plaintiffs make various allegations about shredding of documents and Debra Collins. This is immaterial as well, having nothing to do with the investigation by the defendants of witness tampering and obstruction of justice. Furthermore, as clearly set forth in their memorandum and supporting exhibits, no unlawful conduct occurred in connection with the shredding of documents by Debra Collins or anybody else. See Defendants' Memorandum at 6-12.

5

- At page 12-13, plaintiffs state that the warrant affidavits omitted that "Aaron Auclair worked on former Sheriff Kenney's re-election campaign in the fall of 1998 – the election Kenney lost to White. The omission of this information precluded the magistrate from considering any bias or personal animosity that either Auclair might harbor against Tom White." See Plaintiffs' Memorandum at 12-13. In fact, the warrant affidavits state as follows: "While at college during the fall of 1998 Aaron Auclair worked on Mr. Kenney's campaign to be reelected High Sheriff of Windham County." See Warrant Affidavits at ¶¶ 42 (Exhibits E, F, H to Defendants' SMFNID).

- Perhaps most absurd, plaintiffs suggest that the court was mislead into believing the Auclairs were locked into the room with Marion because the warrant affidavits refer to the room where the meeting occurred as a "lock up." In fact, it is undisputed that the meeting did occur in the courthouse lock up. Anyone who works in a court, particularly a judge, would know what a lock up is, and would not be mislead in any way by such a reference. As noted in defendants' memorandum, the warrant affidavits did not mislead the court on whether the Auclairs were actually locked in the room, but rather simply presented the court with the Auclairs' statements on that point. See Defendants' Memorandum at 27-30 and 51-54.

D.    While irrelevant, many of plaintiffs' arguments are factually incorrect.

The primary thrust of plaintiffs' memorandum is that defendants are wrong in asserting that John Szamocki, John Turner, Larry Gibeault and Karen O'Connor lacked personal involvement in preparing the warrant affidavits at issue, which were prepared by Detective Nault and Attorney Solak. With selective excerpts from hearings before Judge Kaplan in the underlying criminal cases, plaintiffs attempt to show that defendants' affidavits on this point are inconsistent with previous testimony. Even if plaintiffs were correct, which they clearly are not, this argument does nothing to address the more fundamental arguments that the warrants at issue – no matter who prepared them – did not violate plaintiffs' constitutional rights and that all of the defendants, including defendant Nault, are entitled to qualified immunity. Plaintiffs are clearly attempting to divert attention from those arguments, which are set forth in detail above and in defendants' earlier memorandum.

6

All that said, defendants take this opportunity to briefly rebut plaintiffs' misrepresentation regarding the preparation of the warrant affidavits.  Defendants' primary point is that Detective Nault, as his affidavit makes clear, was primarily responsible for the investigation of the plaintiffs for witness tampering/obstruction of justice and for preparing the affidavits at issue in this case, which he did with the direct supervision, advice and consent of Attorney Solak.  See Nault Aff. at ¶¶ 38-44 (attached as Exhibit D to Defs.' Statement of Material Facts Not In Dispute); see also Affidavits of Defendants Gibeault, Turner, Szamocki and O'Connor (exhibits G, I, J, K to Defendants' Motion for Summary Judgment).  Detective Nault would, of course, have no reason to exaggerate his involvement in an investigation or warrant affidavit now under attack in this § 1983 action.  Moreover, Detective Nault's affidavit is consistent with his testimony before Judge Kaplan, when he explained that "[u]sually, the first day, two, three [of an investigation], the sergeant has an active role in assigning what [to investigate], and you can give input into that, but after that, the sergeant will oversee it, but you'll make the decisions where you're going to go."  See Nault testimony (exhibit 35 to plaintiffs' motion for summary judgment) at 141-42.

This is also consistent with other testimony before Judge Kaplan.  For example, Sergeant Szamocki testified as follows:

> Q:  And the case officer is also assigned to prepare any affidavits, if any affidavits have to be done, is that correct?
> A:  That's correct.
> Q:  Okay.  Now in this case, the case officer was who?
> A:  Detective Nault

See Szamocki Testimony at 124 (copy attached hereto as Exhibit A).  It should also be noted that, Trooper O'Connor testified that Attorney Solak was the sole reviewer of her affidavit for the related arrest of Tom White on embezzlement charges – in other words, the procedure was

7

the same in that matter as in the matter at issue in this case. See O'Connor Testimony at 36 (copy attached hereto as Exhibit B).

Finally, it should be noted that plaintiffs provide no evidence to rebut the simple fact that Detective Nault prepared the affidavits for the arrest of the plaintiffs on the charges at issue in this case under the direct supervision of Attorney Solak, who advised that probable cause existed, and that the remaining defendants had no substantive role in the preparation of those affidavits.

## II.    CONCLUSION

For the reasons stated herein and in defendants' original memorandum, the defendants respectfully request that summary judgment be granted in their favor on all claims.

DEFENDANTS

NORMAN NAULT, ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _____
PERRY ZINN ROWTHORN
Assistant Attorney General
Federal Bar No. ct19749
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5020
Fax: (860)808-5347
Perry.Zinn-Rowthorn@po.state.ct.us

## **CERTIFICATION**

I hereby certify that the original of the foregoing was served by certified mail, postage prepaid, on this 23rd day of August, 2004 to:

Jon L. Schoenhorn
97 Oak Street
Hartford, CT  06106

_____
Perry Zinn Rowthorn
Assistant Attorney General