

DOCKET NO. CR99-106081S    DOCKET NO. CR99-106088S

STATE OF CONNECTICUT    STATE OF CONNECTICUT

VERSUS    VERSUS

THOMAS WHITE    GLORIA MARION

SUPERIOR COURT
JUDICIAL DISTRICT OF TOLLAND
AT ROCKVILLE, CONNECTICUT
NOVEMBER 12, 1999

C E R T I F I C A T I O N

I hereby certify that the foregoing is a true and accurate transcript of the tapes of the above-mentioned proceeding held before the Honorable Jonathan J. Kaplan at the Superior Court, Judicial District of Tolland at Rockville, Connecticut on November 12, 1999.

Dated this 22nd day of November, 1999, at Rockville, Connecticut.

*Shirley Gordon*
Shirley Gordon
Court Monitor

CERTIFICATION IS NOT VALID
ON PHOTOCOPIES OF THIS TRANSCRIPT

1 incoming statements, from the people you send out to
2 interrogate?
3    A    When statements are obtained by the detectives, they
4 file a report, and they turn the statement into the supervisor
5 -- in this particular case, to me. I review the statements,
6 review the content of the statements, and then, from there, I
7 develop other leads or other interviews that have to be
8 conducted and checked out by the detectives.
9    Q    And is that your standard protocol as a sergeant?
10    A    Yes, it is.
11    Q    And what is the function of the case officer, if one is
12 assigned?
13    A    The case officer coordinates the investigation, he
14 prepares the paperwork and the reports to be submitted and he
15 gets the case ready for prosecution. In most cases, the case
16 officer will be assigned some of the more important leads in
17 an investigation.
18    Q    Okay. And the case officer is also assigned to
19 prepared any affidavits, if any affidavits have to be done, is
20 that correct?
21    A    That's correct.
22    Q    Okay. Now, in this case, the case officer was who?
23    A    Detective Nault
24    Q    And who was his actual sergeant that was in command of
25 him?
26    A    Sergeant John Turner.
27    Q    And can you explain to us how that took place?



CR-11-99-106088 : SUPERIOR COURT

STATE OF CONNECTICUT : TOLLAND JUDICIAL DISTRICT

V. :

THOMAS WHITE : OCTOBER 19, 1999

BEFORE:

THE HONORABLE JONATHAN J. KAPLAN
SUPERIOR COURT JUDGE

APPEARANCES:

For the State:

    MARK SOLAK
    Assistant State Attorney

For the Defendant:

    ARTHUR MEISLER, ESQ.

Jeanne Chace
Court Monitor

---

1       K A R E N  F.  O' C O N N O R, sworn by the clerk,
2  testified under oath as follows:
3  DIRECT EXAMINATION BY MR. SOLAK:
4     Q    For the record, Karen, would you please tell us what your
5  occupation is.
6     A    I'm a Connecticut state trooper.
7     Q    And how long have you been so employed?
8     A    I was sworn as a trooper in June of 1995.
9     Q    And what is your current assignment?
10    A    I'm currently assigned to the Employees' Assistance Program
11  because of my maternity but had been assigned by them to remain in
12  my position with the Eastern District Criminal Investigations
13  section.
14    Q    Okay. And how long have you been with the Criminal
15  Investigations section?
16    A    I've been with Major Crime for two years.
17    Q    And could you just generically describe your duties there?
18    A    I investigate cases as distributed to me most major
19  felonies, assist in homicide investigations as assigned to me by
20  my sergeant.
21    Q    Okay. And would you please tell the Court who your
22  sergeant is?
23    A    My sergeant is Sergeant John Szamocki (phonetic).
24    Q    Did there come a time when you were assigned to investigate
25  the financial activities of Thomas White as a Windham deputy
26  sheriff?
27    A    Yes, there did.
28    Q    And approximately when was that?
29    A    In May of 1999.

1

36

```
 1  file cabinets.
 2     Q   Did you prepare a draft of this warrant?
 3     A   I did it on the computer, on my personal laptop computer
 4  and printed it out from there, made corrections right off my copy
 5  that was on my laptop.
 6     Q   Did you have anybody review that draft before --
 7     A   Mr. Solak.
 8     Q   And that was prior to Mr. Solak signing it?
 9     A   Yes.
10     Q   Did he -- I'll withdraw that.  How many drafts of the
11  warrant did you prepare for Mr. Solak?
12     A   I'm happy to say --
13         MR. SOLAK:  I object, Your Honor.  I just don't see
14  the relevance.  It's getting into discovery.
15         THE COURT:  What's your claim on this?
16         MS. FAVREAU:  I'll withdraw.
17  BY MS. FAVREAU:
18     Q   Did you ever ask Debra Collins any questions involving your
19  drafting of that warrant while you prepared it in the State's
20  Attorney's Office?
21     A   No.  My questions were directed to Attorney Solak.
22     Q   You did not prepare the warrant for my client, Gloria
23  Marion?
24     A   No.  I did not.  Detective Naults (phonetic) -- that
25  warrant.
26         MS. FAVREAU:  Could I have a moment, Your Honor?
27         THE COURT:  Sure.
28  BY MS. FAVREAU:
29     Q   Did Detective Nault use your laptop to prepare the warrant?
```

37

```
 1     A   No, he did not.  We have our own laptops.
 2     Q   Do you and Detective Nault think a lot alike?
 3         MR. SOLAK:  Object.  Irrelevant.
 4         THE COURT:  I don't know, again, at this stage, for
 5  these motions, I'm not sure that it's relevant.  It's
 6  interesting, but I'm not sure if it's relevant.
 7         MS. FAVREAU:  No further questions, Your Honor.
 8         THE COURT:  Objection is sustained for the record.
 9  Mr. Solak, any redirect?
10         MR. SOLAK:  Yes.
11  REDIRECT EXAMINATION BY MR. SOLAK:
12     Q   When the meeting with the accountant when Marion Law Firm
13  occurred, you indicated that Debbie Collins was there.  What was
14  the purpose of having her be there?
15     A   She basically explained the cataloguing of evidence.
16     Q   Okay.  To the accountant at Marion?
17     A   Yes.
18     Q   All right.  And when the meeting occurred with the IRS
19  agent, what was the purpose of Attorney Collins being there?
20     A   The same.  I don't believe it was as active as it was in
21  that the records weren't really -- she was more just there like
22  Rene Barbeau was.  You know, there wasn't as much --
23     Q   She was there to advise on cataloguing if necessary.
24     A   Yeah.  There wasn't as much interaction on that one.
25     Q   And the cataloguing, again, that you are referring to is
26  the cataloguing contained in those boxes?
27     A   Yes, and the cataloguing of the bank records --
28     Q   Of bank records.
29     A   -- themselves.  Just by organizing them chronologically and
```